# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

BRIAN D. WELLONS,

        Petitioner,                        Case Number: 2:14-14730
                                                            HONORABLE SEAN F. COX

v.

CATHERINE S. BAUMAN,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF
## HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Brian D. Wellons seeks habeas corpus relief under 28 U.S.C. § 2254. Petitioner is a state prisoner in the custody of the Michigan Department of Corrections pursuant to convictions for second-degree murder, felon in possession of a firearm, and two counts of possession of a firearm during the commission of a felony. He raises six claims for habeas relief. Respondent argues that the claims are procedurally defaulted and/or meritless. The Court denies the petition.

### I. Background

Petitioner's convictions arise from a shooting in Pontiac, Michigan on May 20, 2011, which resulted in the death of Craig Atkins. Petitioner and Atkins were both romantically involved with the same woman, Keisha Connelly. Amanda Atkins testified that the victim was her uncle. On the evening of the shooting, Craig Atkins told Amanda that he was going to take Connelly to the store. Amanda saw them drive away together. In the meantime,

Petitioner entered the parking lot and began talking to Clintones Royal, who was sitting in Amanda's van. When Atkins returned, he approached Amanda's vehicle. Amanda heard someone ask her uncle who he was and then heard a gunshot. Amanda testified that the gunshot came from the direction of where Petitioner had been standing. Royal also testified that Petitioner shot Atkins while he was standing outside a vehicle talking to her. Petitioner testified in his own defense. He testified that he knew Atkins had recently been released from prison for murdering someone. Petitioner was frightened of Atkins because two weeks earlier Atkins had said Petitioner looked like someone who owed him money. Petitioner testified that, on the night of the shooting, Atkins crept up to the van where Petitioner was talking to Royal and reached toward his waistband. Petitioner panicked and shot Atkins. Petitioner did not turn himself into police because he was on parole and carrying a gun. Petitioner was shot five or six days after he shot Atkins. Police located him in the intensive care unit of a hospital and arrested him upon his hospital discharge.

Petitioner was convicted by a jury in Oakland County Circuit Court of second-degree murder, felon in possession of a firearm, and two counts of felony-firearm. He was acquitted of the charge of first-degree premeditated murder. On November 8, 2011, he was sentenced as follows: 50 to 90 years' imprisonment for the second-degree murder conviction, 6 to 60 years' imprisonment for the felon-in-possession conviction, and 5 years' imprisonment for the felony-firearm convictions.

Petitioner filed an appeal of right in the Michigan Court of Appeals arguing that insufficient evidence supported submission of the first-degree murder charge to the jury, the

2

prosecutor engaged in misconduct, offense variable 3 was misscored, the trial court made several errors in evidentiary rulings, the courtroom was improperly partially closed during trial, trial counsel was ineffective, and the cumulative effect of errors warrants a new trial. The Michigan Court of Appeals affirmed Petitioner's convictions and sentences. *People v. Wellons*, 2013 WL 1631973 (Oakland County Cir. Ct. Apr. 16, 2013). Petitioner sought leave to appeal in the Michigan Supreme Court raising the same claims raised in the Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Wellons*, 495 Mich. 865 (Mich. Sept. 30, 2013).

    Petitioner then filed the pending habeas corpus petition. He raises these claims:

I.     There was insufficient evidence of premeditation to submit the first-degree murder charge to the jury as a possible verdict.

II.     The prosecutor denied the Petitioner due process and a fair trial by improper questioning of the Petitioner to the extent that the Petitioner was seriously prejudiced.

III.     The trial court erred in denying the Petitioner's objection to the scoring of OV 3 and resentencing is required.

IV.     Mr. Wellons was denied his rights to a fair trial when the court:

    a.     Abused its discretion, over defense objection, in admitting a photo that had nothing to do with the criminal case, but, would bring sympathy to the victim and his mother for the loss of a son;

    b.     Refused to allow the defense to question a witness about whether they knew that Mr. Wellons was shot in retaliation for shooting Mr. Atkins, to support his defense and attack Mr. Atkins' credibility;

    c.     Erred when it allowed the jury to hear that the prosecution witness was being made uncomfortable by someone within the court, where, it could not be shown that Mr. Wellons had anything to do with the alleged

actions, the court should have instructed the jury to disregard the statement;

    d. Excluded the public during Mr. Wellons' trial denying him his constitutional rights, and;

    e. When it gave the jury a recording that was not submitted as an exhibit, which they based their verdict upon, and counsel was ineffective for failing to object.

V. Substantial prosecutorial misconduct deprived Mr. Wellons of his ... rights to a fair trial, and trial counsel was ineffective for not objecting, where the prosecutor:

    a. Mischaracterized the evidence to support his arguments;

    b. Vouched for witness' credibility;

    c. Repeatedly commented upon Mr. Wellons not having supporting witnesses to validate his testimony, thus, diminishing his burden of proof;

    d. By improperly appealing to the sympathy of the jury;

    e. Making prejudicial comments to prejudice Mr. Wellons and help bolster Mr. Atkins' credibility; and

    f. The numerous instances of misconduct require reversal and trial counsel was ineffective for failing to object to each one and request a curative instruction.

VI. Mr. Wellons was denied his Sixth and Fourteenth Amendment rights by the ineffective assistance of counsel by failing to call witnesses that would have supported Mr. Wellons' defense and witnesses that would have testified to the victim's reputation upon the street.

VII. The cumulative effect of the forgoing errors and omissions deprived Mr. Wellons of numerous constitutional rights, and requires that a new trial be ordered in this matter.

## II. Standard

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 408. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court

decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and

6

comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103, 131 S. Ct. at 786–87.

Additionally, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. Discussion

### A. Claim One: Submission of First-Degree Murder Charge to Jury

Petitioner is not entitled to habeas corpus relief on his claim that insufficient evidence supported the submission of the first-degree murder charge to the jury. "'[C]learly-established Supreme Court law provides only that a defendant has a right not to be *convicted* except upon proof of every element of a crime beyond a reasonable doubt; the Supreme Court has never held that submission of a charge upon which there is insufficient evidence violates a defendant's constitutional rights where the defendant is acquitted of that charge.'" *Long v. Stovall*, 450 F. Supp. 2d 746, 752 (E.D. Mich. 2006), quoting *Skrzycki v. Lafler*, 347 F. Supp.2d 448, 453 (E.D. Mich. 2004) (emphasis in original). Because Petitioner was acquitted of the first-degree murder charge, he fails to show that its submission to the jury violated a constitutionally protected right.

### B. Claims Two and Five: Prosecutorial Misconduct

Petitioner raises several claims of prosecutorial misconduct. He argues that the

7

prosecutor improperly cross-examined him about prior illegal activity and his lack of income. Petitioner also claims that the prosecutor mischaracterized evidence, vouched for witnesses' credibility, commented on the absence of defense witnesses, improperly appealed to the jury's sympathy, and generally disparaged Petitioner's character.

Respondent argues that these claims are procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of these claims.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *Parker v. Matthews*, 567 U.S. 37, —, 132 S. Ct. 2148, 2153 (2012). In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). This Court must ask whether the Michigan Court of Appeals' decision denying Petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law

8

beyond any possibility for fairminded disagreement.'" *Id.* at 2155, *quoting Harrington*, 562 U.S. at 103.

In his first allegation of prosecutorial misconduct, Petitioner argues that the prosecutor improperly referenced his lack of education, lack of income, and his association with people who had engaged in illegal activity. The Michigan Court of Appeals held that, while such evidence is inadmissible under certain circumstances, it was properly admitted in this case. *Wellons*, 2013 WL 1631973 at *2. The court of appeals held that the prosecutor questioned Petitioner on these topics in response to Petitioner's own testimony about his fear of the victim, that he did not associate with dangerous activities and that, after the shooting, he intended to come forward to police once he had enough money to hire an attorney. *Id.* The state court's conclusion that the prosecutor's cross-examination was a fair response to Petitioner's testimony on direct examination is reasonable. Petitioner opened the door to questioning on these topics through his own testimony. No misconduct occurred.

Petitioner's remaining prosecutorial misconduct claims were also rejected by the Michigan Court of Appeals. The state court held that the prosecutor's questions and arguments "were within permissible bounds and did not constitute improper argument or vouching." *Wellons*, 2013 WL 1631973 at *4. First, Petitioner argues that the prosecutor mischaracterized the evidence on cross-examination of Petitioner when he asked if Atkins was the first person Petitioner had encountered who had been imprisoned for murder. Petitioner testified on direct examination that he killed Atkins in self-defense and that he had been especially frightened of Atkins because he knew Atkins had previously been

9

incarcerated. The prosecutor questioned Petitioner about whether he knew other people who had been incarcerated for murder. The prosecutor's questions on this subject were a relevant response to Petitioner's testimony. The prosecutor sought to argue that Petitioner was accustomed to associating with criminal types and would not have been especially shocked at, or sensitive to, Atkins' criminal past. The state court's conclusion that this was a fair argument is reasonable.

Next, Petitioner argues that the prosecutor improperly vouched for the credibility of witnesses Amanda Atkins and Clintones Royal. "'Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness.'" *U.S. v. Trujillo*, 376 F.3d 593, 607 (6th Cir. 2004), quoting U.S. *v. Martinez*, 253 F.3d 251, 253-54 (6th Cir. 2001). The prosecutor did not imply that he had some special information about Atkins' or Royal's testimony or credibility. Instead, considered in its entirety, the prosecutor's argument asked the jury to consider these witnesses' motives for testifying and the consistency of their testimony. The prosecutor did not ask the jury to convict based upon the prosecutor's special knowledge about their credibility. Instead, he asked the jury to evaluate the witnesses' credibility based upon the evidence presented. None of the prosecutor's arguments amount to vouching for the witnesses' testimony.

Petitioner argues that the prosecutor also committed misconduct by commenting on the defense's failure to present any witnesses to corroborate Petitioner's testimony in his own defense. The Michigan Court of Appeals' rejection of this claim was not an unreasonable

application of *Darden.* A prosecutor may highlight weaknesses in a defense case by pointing out the absence of supporting testimony or documents. *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005). *See also United States v. Roux*, 715 F.3d 1019, 1031 (7th Cir. 2013) ("So long as the jury has been properly instructed that the burden of proof belongs to the government and that the defendant has no burden to present any evidence, we have generally permitted comments on the lack of evidence supporting a theory of defense, provided that the comments do not implicate or 'tax' the defendant's right not to testify."); *Menendez v. Terhune*, 422 F.3d 1013, 1034 (9th Cir. 2005) (holding that a prosecutor "may comment on the absence of evidence even when such evidence was available, but inadmissible, so long as there is sufficient evidence to support the prosecutor's version of events"); *United States v. Brennan*, 994 F.2d 918, 926 (1st Cir. 1993) ("[A] prosecutor's comments regarding a defendant's failure to produce documents corroborating a defense theory are proper if they are limited to assailing the strength or plausibility of the proffered theory."). The prosecutor's argument did not shift the burden of proof to Petitioner. Instead, the prosecutor pointed out that portions of Petitioner's testimony were unsupported by any other evidence.

Next, Petitioner argues that the prosecutor improperly appealed to the sympathy of the jury when he asked the jury to place themselves in the place of Amanda Atkins and Royal, who were present for and witnessed the shooting. A prosecutor, generally, should not "make statements calculated to incite the passion and prejudices of the jurors." *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006) (internal quotations omitted). "'[A]rguments that

encourage juror identification with crime victims are improper.'" *Wogenstahl v. Mitchell*, 668 F.3d 307, 333 (6th Cir. 2012) (citing *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008)). Here, however, the prosecutor did not ask the jurors to identify with the victim. Instead, he responded to claimed inaccuracies and discrepancies in the witnesses' testimony by asking jurors to consider whether some inconsistencies were the result of the trauma of the event witnessed. Such an argument was not improper.

Petitioner also contends that the prosecutor improperly denigrated his character and bolstered the character of the victim. Certain of the prosecutor's questions highlighted by Petitioner were objected to by defense counsel and the objections were sustained by the court. The questions to which no objection was made were not improper. Moreover, even if some of the prosecutor's questions were improper, any potential prejudice was cured by the trial court's instruction that the attorneys' statements, arguments, and questions were not evidence. Jurors are presumed to follow their instructions. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Habeas relief is not warranted on this claim.

Finally, Petitioner argues that the cumulative effect of the prosecutor's misconduct denied him his right to a fair trial. The Court has found no instances of misconduct. Meritless individual claims of error cannot by accumulation create constitutional infirmity. *See Campbell v. United States*, 364 F.3d 727, 736 (6th Cir. 2004) ("[T]he accumulation of non-errors cannot collectively amount to a violation of due process.").

### C. Claim Three: Scoring of Offense Variable 3

Petitioner's claim that the trial court erred in the scoring of offense variable (OV) 3

is not cognizable on federal habeas review because it does not implicate any federal rights. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *see also Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("[S]tate courts are the ultimate expositors of state law."). "[A] claim that the trial court mis-scored offense variables in determining the state sentencing guidelines is not cognizable on habeas corpus review." *Adams v. Burt*, 471 F. Supp. 2d 835, 844 (E.D. Mich. 2007). Habeas relief will be denied.

## D. Claim Four: Trial Court's Evidentiary Rulings and Partial Courtroom Closure

Petitioner's fourth claim concerns the trial court's evidentiary rulings and partial closure of the courtroom. He argues that the trial court's rulings denied him his right to due process and a fair trial.

First, Petitioner challenges the trial court's decision allowing into evidence a picture of the victim with his mother. Defense counsel objected on the ground that the photograph would garner sympathy for the victim and his mother and asked that a photograph of the victim by himself be admitted instead. The trial court denied the objection and allowed admission of the photograph. The Michigan Court of Appeals first found that the photograph was of the victim and his sister, not his mother, and concluded that the trial court did not abuse its discretion by admitting the photograph. *Wellons*, 2013 WL 1631973 at *3. "[S]tate-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people

as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting Montana v. Egelhoff, 518 U.S. 37, 43 (1996)). Petitioner has failed to demonstrate that the court of appeals' resolution is contrary to, or an unreasonable application of, clearly established federal law. The Sixth Circuit has upheld the admission of photographs depicting a victim's severed head, severed breast, and severed body parts placed near the victim's torso. *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005). Here, the photograph showed the victim while he was alive and was thus much less inflammatory than photographs of a murder victim's body and was relevant to show the victim's relative size. Its admission did not deny Petitioner a fundamentally fair trial.

Petitioner was shot in the back five or six days after he shot Atkins. Petitioner attempted to cross-examine Amanda Atkins about whether the shooting of Petitioner was done in retaliation for the victim's death, but the trial court found this testimony inadmissible. The Michigan Court of Appeals held that the evidence was properly excluded because Petitioner failed to show that his theory went beyond mere speculation and any testimony from Atkins on this subject would be hearsay. *Wellons*, 2013 WL 1631973 at *3. State rules excluding evidence from criminal trials "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (internal citations omitted). The record supports the state court's finding that the trial court excluded this evidence based upon a well-grounded requirement that evidence be relevant and based upon something more than mere speculation. The decision was not arbitrary or disproportionate

14

to its purpose. Habeas relief is denied on this claim.

Petitioner next argues that the trial court erred in allowing witness Clintones Royal to testify that someone present in the courtroom made her uncomfortable and for closing the courtroom during her testimony. The jury was excused from the courtroom and the gallery was cleared while Royal testified that, the previous day, a man in the courtroom told her that if she testified against Petitioner somebody would come and get her. 10/14/2011 Tr., at p. 32 (ECF No. 6-4, Pg. ID 285). Because this testimony was presented outside the jury's presence, Petitioner was not prejudiced by it. Before the jury was called back into the courtroom, the trial court concluded that the courtroom would remain empty during Royal's testimony. *Id.* at 33 (ECF No. 6-4, Pg. ID 285). Petitioner did not object to this resolution.

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The right is applicable to the states through the Fourteenth Amendment. *Duncan v. Louisiana*, 391 U.S. 145, 148-49 (1968). "The central aim of a criminal proceeding must be to try the accused fairly." *Waller v. Georgia*, 467 U.S. 39, 46 (1984). The public-trial guarantee was created to further that aim. *Id.*, *citing Gannett Co. V. DePasquale*, 443 U.S. 368, 380 (1979). A public trial helps to ensure that judge and prosecutor carry out their duties responsibly, encourages witnesses to come forward, and discourages perjury. *Id.* The violation of the constitutional right to a public trial is a structural trial error, not subject to the harmless error analysis. *Id.* at 49-50, n.9. The right to a public trial, while an important structural right, "is also one that can be waived when a defendant fails to object to the closure of the courtroom."

15

*Johnson v. Sherry*, 586 F.3d 439, 444 (6th Cir. 2009). "[C]ertain decisions regarding the exercise or waiver of basic trial rights are of such moment" that they cannot be made for the defendant by his attorney without the defendant's express consent. *Florida v. Nixon,* 543 U.S. 175, 187 (2004). No Supreme Court precedent supports a finding that the waiver of the right to a public trial is one of those rights. *United States v. Whalen*, 578 F. App'x 533, 539 (6th Cir. 2014); *see also Guyton v. Butler*, 490 F. App'x 331, 333 (11th Cir. 2012) ("The Supreme Court has not held that counsel cannot waive his client's right to a public trial."). Defense counsel did not object to the closing of the courtroom during Royal's testimony. Petitioner, therefore, waived his right to a public trial.

Finally, Petitioner argues that the trial court erred in providing to the jury a copy of a recording of Amanda Atkins' call to 911. Petitioner argues that this recording, although played for the jury, was never admitted into evidence. The Michigan Court of Appeals found there was no basis for exclusion of the tape and that, although it was not formally admitted as an exhibit at the time it was played, the parties stipulated to its admission before the jury verdict was disclosed. *Wellons*, 2013 WL 1631973 at *4. The court of appeals denied relief on this basis. Petitioner fails to show that the admission of this tape, deemed proper under Michigan law, rose to the level of a federal constitutional claim warranting relief. The state court's admission of this evidence was reasonable and did not result in a denial of fundamental fairness.

### E. Claim Six: Ineffective Assistance of Counsel

Petitioner argues that his trial attorney was ineffective in failing to object to numerous

instances of prosecutorial misconduct and failing to call witnesses who would have supported his defense and testified as to his reputation on the street.

The AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 16 (2013). The standard for obtaining relief is "'difficult to meet.'" *White v. Woodall*, — U.S. —, 134 S. Ct. 1697, 1702 (2014), *quoting Metrish v. Lancaster*, 569 U.S. —, —, 133 S. Ct. 1781, 1786 (2013). In the context of an ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1984), the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687. To establish deficient representation, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. In order to establish prejudice, a petitioner must show that, but for the constitutionally deficient representation, there is a "reasonable probability" that the outcome of the proceeding would have been different. *Id.* at 694.

Petitioner argues that counsel was ineffective in failing to object to the prosecutor's

misconduct. But as discussed above, Petitioner has failed to show that the prosecutor engaged in misconduct. Therefore, counsel was not ineffective in failing to object on this basis.

Petitioner also argues that counsel was ineffective in failing to call defense witnesses who would have supported his self-defense theory and testified as to the victim's reputation on the street. The Michigan Court of Appeals denied this claim finding that Petitioner failed to make an offer of proof as to what the witnesses' substantive testimony would have been. *Wellons*, 2013 WL 1631973 at *4. Other than his own arguments, Petitioner also fails to make an offer of proof in his habeas petition showing that these potential defense witnesses were willing to testify and would have testified in accordance with Petitioner's version of events. Petitioner offers no evidentiary support which would overcome the AEDPA's doubly deferential standard. Habeas relief is denied on this claim.

### F. Claim Seven: Cumulative Effect of Alleged Errors

Finally, Petitioner argues that the cumulative effect of the errors alleged in his petition violated his right to a fair trial. On habeas review, a claim that the cumulative effect of errors rendered a petitioner's trial fundamentally unfair is not cognizable. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011), *citing Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005). Therefore, Petitioner is not entitled to relief on this claim.

### IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the

Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that none of the claims in the habeas petition warrant relief. Therefore, the Court denies a certificate of appealability.

## V. Conclusion

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus and a certificate of appealability are **DENIED**.

Dated: June 29, 2017  
                                                        s/Sean F. Cox  
                                                        Sean F. Cox  
                                                        U. S. District Judge

I hereby certify that on June 29, 2017, the foregoing document was served on counsel of record via electronic means and upon Brian D. Wellons via First Class mail at the address

below:

Brian D. Wellons
512337
ALGER MAXIMUM CORRECTIONAL FACILITY
N6141 INDUSTRIAL PARK DRIVE
MUNISING, MI 49862

              <u>s/J. McCoy    </u>
              Case Manager